690 A.2d 1138

**In re Assignment of Judge Bernard J. AVELLINO.**

Supreme Court of Pennsylvania.

Argued Jan. 28, 1997.

Decided Feb. 7, 1997.

386

Howard M. Holmes, Zygmont Pines, H. Robert Fiebach, Lillian E. Benedict, Philadelphia, PA, for petitioners.

388

John J. Duffy, for respondent.

Bernard J. Avellino, pro se.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION OF THE COURT

ZAPPALA, Justice.

This matter comes before the Court by way of a Rule to Show Cause issued by the Court acting on a Petition filed by the Honorable Alex Bonavitacola, President Judge of the Court of Common Pleas for the First Judicial District, and the Honorable John Herron, Administrative Judge of the Trial Division of that court. The Petition called to the attention of the Court a dispute between Judge Herron and the Honorable Bernard J. Avellino, a judge of the common pleas court. More particularly, the Petition averred that Judge Herron had assigned Judge Avellino to preside over criminal trials in the court's "felony-waiver program" for the calendar year 1997, and that Judge Avellino had refused to comply with this assignment. A Rule was issued on January 8, directing Judge Avellino to show cause within five days why he should not comply with the assignment. Additionally, we ordered that Judge Avellino comply with the assignment pending further Order of this Court.

Judge Avellino did not immediately abide by the Order that he comply with the assignment pending further Order. Rather, he filed an action in the United States District Court for the Eastern District of Pennsylvania, and there sought a temporary restraining order enjoining enforcement of the assignment. The court denied the temporary restraining order on January 10. Judge Avellino reported for his assignment on January 13, 1997.

In his Answer to the Rule to Show Cause, Judge Avellino moved to dismiss for lack of jurisdiction, moved for the recusal of the Court because it is a defendant in the aforementioned federal action, and asserted two reasons for his refusal to

comply with the assignment: (1) that it was unreasonable within the meaning of Pennsylvania Rule of Judicial Administration 706(d) and Paragraph 3(a) of this Court's Directive of April 11, 1986, No. 55 Judicial Administration Docket No. 1, and (2) that it was retaliatory. He further moved for an evidentiary hearing to establish a record on the factual issues raised by the dispute, which he identified in terms mirroring his reasons for refusing to comply, i.e., whether the assignment is reasonable within the meaning of Pa.R.J.A. 706(d) and the April 11, 1986 Directive, and whether the assignment is an invalid effort to punish him.

█ Judge Avellino argues that the Supreme Court has no jurisdiction because the Constitution establishes that the Court "shall have such jurisdiction as shall be provided by law," Article V, Section 2(c). He asserts that this matter does not fall within any of the classes of cases which the General Assembly has assigned to the Court's original jurisdiction, 42 Pa.C.S. § 721 (habeas corpus, mandamus or prohibition to courts of inferior jurisdiction, and quo warranto as to any officer of statewide jurisdiction) or appellate jurisdiction, 42 Pa.C.S §§ 722–725. He also argues that the Court's extraordinary jurisdiction, 42 Pa.C.S. § 726, does not apply as there is no case "pending before any court or district justice of this Commonwealth." Finally, he argues that Article V, Section 10 of the Constitution, vesting the Supreme Court with "general supervisory and administrative authority over all the courts," does not constitute an independent source of jurisdiction to adjudicate this matter.

Article V, Section 2 of the Constitution of 1968 did, as Judge Avellino suggests, establish that the Supreme Court has such *jurisdiction* "as shall be provided by law." However, Section 1 of the Schedule to Article V provided that "The Supreme Court shall exercise *all the powers* and, until otherwise provided by law, jurisdiction now vested in the present Supreme Court...." It is apparent by its placement that the phrase "until otherwise provided by law" in this section applies only to "jurisdiction" and not to "powers." In 1976, the General Assembly "provided by law" for the jurisdiction of the Court

by enacting Title 42 of the Pennsylvania Consolidated Statutes, the Judicial Code. According to the terms of Section 1 of the Schedule, however, the adoption of the Judicial Code superseded that Section only with respect to the jurisdiction of the Court. Thus the Court may still "exercise all the powers ... vested in the ... Supreme Court" at the time the 1968 Constitution was adopted, among which were those collectively referred to as the King's Bench powers. See generally *Carpentertown Coal & Coke Co. v. Laird,* 360 Pa. 94, 61 A.2d 426 (1948).

The General Assembly recognized this distinction by acknowledging the general powers of the Supreme Court in 42 Pa.C.S. § 502. See also Pa.R.A.P. 3309, which is drawn in the disjunctive ("An application for extraordinary relief under 42 Pa.C.S. § 726, or under the powers reserved by the first sentence of Section 1 of the Schedule to the Judiciary Article....")

■ Although in many respects an exercise of the Court's King's Bench powers is to the same effect as an exercise of extraordinary jurisdiction under 42 Pa.C.S. § 726, the two are not identical. Extraordinary jurisdiction under section 726 enables the Court to assume plenary jurisdiction of a matter pending before a court or district justice at any stage. The King's Bench powers are not so limited. The "power of general superintendency over inferior tribunals," may be exercised where no matter is pending in a lower court. Cf. *President Judge Determination Cases,* 420 Pa. 243, 216 A.2d 326 (1966) (King's Bench powers invoked to determine priority of commission of common pleas court judges). We therefore reject Judge Avellino's argument that this Court cannot take cognizance of the dispute because the subject matter does not fall within our statutory original jurisdiction, there is no final order as to which we can exercise appellate jurisdiction,[1] and

1. Judge Avellino suggests that our Court's authority to review cases concerning judicial assignments might be exercised in the form of appellate jurisdiction over a final order from a "mechanism" prescribed by general rule to resolve such disputes. As explained in the text, our authority is not so limited. We likewise reject the assertion

there is no "case" pending as to which we can assume extraordinary jurisdiction.

█ The Supreme Court's "general supervisory and administrative authority over all the courts" was also set out explicitly in Article V, Section 10(a) of the 1968 Constitution. It was pursuant to this authority and the rulemaking authority identified in Section 10(c) that Pa.R.J.A. 706(d) and the April 11, 1986, Directive were promulgated. See generally *Petition of Blake*, 527 Pa. 456, 593 A.2d 1267 (1991). Judge Herron's assignment of Judge Avellino to the felony-waiver program when making assignments in the Trial Division for 1997 was made pursuant to his authority as Administrative Judge as described in paragraph (3)(A) of the Directive. Because the authority under which assignments are made ultimately derives from this Court, review and resolution of any disputes concerning assignments must necessarily be subject to the authority of this Court.

On January 22, 1997, Judge Herron filed an answer to Judge Avellino's Motion to Dismiss Petition. Paragraph 17 of the answer states, "Administrative Judge Herron did not retaliate against Judge Avellino's June 10 Complaint or his August 28 JCB Complaint. On October 17, 1996, when Administrative Judge Herron announced all Trial Division judicial assignments for the calendar year commencing January 6, 1997, including Judge Avellino's, Administrative Judge Herron had no knowledge of either the June 10 Complaint, the August 28 JCB Complaint or the nature of the allegations contained

that absent such a mechanism Judge Avellino was without recourse. In *Carpentertown Coal & Coke* it was noted that "The power of controlling the action of inferior courts is so general and comprehensive that it has never been limited by prescribed forms of procedure or by the particular nature of the writs employed for its exercise." 360 Pa. at 100, 61 A.2d at 429. Indeed, as evidenced by the matter docketed in this Court at No. 132 Eastern District Miscellaneous Docket 1995, Judge Avellino is personally aware that this Court will receive papers in the form of a "letter plea" and treat them in appropriate fashion. In that matter, Judge Avellino approached the Court by way of letter, asserting that he was "aggrieved by the conduct of Judge Doyle of the Commonwealth Court" and had "nowhere else to turn." This Court ordered that the letter be treated as a petition for exercise of the Court's King's Bench powers and, as such, it was denied.

therein."[2] Furthermore, Judge Herron asserted in paragraph 14 of his answer that he did not become aware of the existence of the June 10 complaint until December 30, 1996, when Judge Avellino circulated it via electronic mail to all trial division judges in the Philadelphia County Court of Common Pleas.

On January 30, 1997, we entered a per curiam order directing President Judge Bonavitacola, Judge Avellino, and general counsel of the Judicial Conduct Board to submit affidavits or verifications setting forth relevant facts within their knowledge as to whether Judge Herron was made aware of complaints made by Judge Avellino prior to October 17, 1996. This order provided those individuals with an opportunity to respond to the factual assertions raised in Judge Herron's answer.

The verification submitted by President Judge Bonavitacola stated that he received the memorandum from Judge Avellino dated June 10, 1996, but did not forward a copy of the memorandum to Judge Herron or discuss the contents with him before October 17, 1996 or thereafter. Furthermore, he stated that at no time had he communicated to Judge Herron any comment, written or otherwise, that may have been made by Judge Avellino alleging wrongdoing by Judge Herron. The verification of Gregory D. Anthony, Deputy Counsel for the Pennsylvania Judicial Conduct Board stated that since October 17, 1996 to the present date, no full investigation has been authorized in the matter docketed at JCB # 96–311 (the complaint filed by Judge Avellino) and, therefore, Judge Herron has received no notice from the Judicial Conduct Board of the same.

Judge Avellino filed an extensive verification detailing the chronology of events allegedly supporting his claim of retalia-

2. The "June 10" Complaint referred to was a memorandum dated June 10, 1996 from Judge Avellino to President Judge Alex Bonavitacola complaining that conduct of Judge Herron had an appearance of impropriety and that if the perceived problem was not resolved by August 1, he would report Judge Herron to the Judicial Conduct Board. The "August 28 JCB Complaint" refers to the formal complaint filed with the Judicial Conduct Board by Judge Avellino on August 28, 1996.

tion. Judge Avellino indicated that he made President Judge Bonavitacola aware of his misgivings relating to Judge Herron's actions with regard to inter alia, a list room jury demand program, which involved assigning jury trials on an individual calendar basis. He stated that President Judge Bonavitacola knew from his written and oral statements before May 22, 1996 that he intended to report the claimed misconduct of Judge Herron to the Judicial Conduct Board and/or to commence litigation. Judge Avellino further indicated that President Judge Bonavitacola undertook efforts to address his concerns and, as part of a negotiating process, told Judge Herron of Judge Avellino's intent to file a formal complaint and that Judge Avellino's agreement to defer doing so was an express condition of continued discussions.

Judge Avellino's portrayal of the events culminating in his refusal to accept his judicial assignment reflects his acrimonious attitude towards Judge Herron. His verification conflicts with those filed by President Judge Bonavitacola and Judge Herron as to whether Judge Herron was made aware of his complaints prior to October 17, 1996. After a review of the verifications submitted, however, we find that resolution of that factual dispute is irrelevant and immaterial to a determination of the legal issues before us.[3]

Judge Avellino argues first that his assignment, which he characterizes as a demotion, was invalid because it was unreasonable within the meaning of paragraph 3(A) of the April 11, 1986, Directive. That paragraph states that

---

**3.** Along with the verification, Judge Avellino filed a Demand for Jury trial and Application For Leave To Conduct Formal Discovery, claiming that he is entitled to undertake discovery and proceed by way of a jury trial under the Pennsylvania Rules of Civil Procedure. Inasmuch as this matter arises pursuant to the Supreme Court's general supervisory and administrative authority over the courts, no right to jury trial or discovery exists and an appropriate order denying these requests will be entered herewith. It would appear, however, that in asserting the need for discovery, Judge Avellino implicitly acknowledges that his allegations were made without personal knowledge or substantial foundation, and that he must now engage in a "fishing expedition" to uncover evidence that might support them.

In exercising the administrative supervision prescribed, the Administrative Judge shall have the following general powers for facilitating the speedy and proper administration of justice in those divisions.

(A) To assign individual judges (including visiting judges and available judges from other divisions) to preside in cases, in designated court rooms and, from time to time to reassign the individual judges therein. *Such assignments shall be for a reasonable period of time and no judge shall, without his consent, be assigned for any unreasonable or indefinite term to any specified duty.*

(Emphasis added.)

■ Judge Avellino argues that by including the emphasized language the Court has recognized that a judge has a right to refuse to consent to an unreasonable or indefinite assignment. It is readily apparent, however, that the language speaks only to the reasonableness of duration of an assignment ("reasonable period of time;" "unreasonable or indefinite term") and not to the reasonableness of the duties to be performed.[4] Nor could it be otherwise.

■ All judicial duties within a court of common pleas are equally necessary to the disposition of the business of the court. The creation of divisions and the differentiation of duties within divisions are simply administrative tools employed to facilitate the efficient dispensing of justice. No division is more or less important than another division; no judicial duty is more or less important than another judicial duty; no judge is more or less important than another judge. Ipso facto, no judge can complain that an assignment to

---

**4.** As Judge Herron's order encompassed the calendar year 1997, the assignments therein by definition are not for an indefinite term. Moreover, as the order assigned all the judges of the Trial Division to duties for the same one year period, it is self-evident that the term of the assignments is not unreasonable. At oral argument, counsel for Judge Avellino suggested that in proportion to the number of years remaining in his present term, a one year assignment may be construed as unreasonable. To restate this argument is sufficient to demonstrate its preposterousness. Quaere whether *any* assignment could be deemed reasonable as the end of a judge's term nears.

perform judicial duties is unreasonable. Likewise, no change in assignment can properly be characterized as either promotion or demotion. A judge receives the same salary, benefits, and emoluments of office regardless of division and regardless of assignment.[5] Cf. *Ross v. Zavarella,* 916 F.2d 898, 902 (3d Cir.1990) (no irreparable harm warranting immediate review of denial of preliminary injunction restraining transfer of judge between divisions of court because transfer did not denigrate her status as judge or judicial reputation or cause her to suffer diminution in salary or tenure).

■■■■■ It follows from the foregoing that no constitutionally protected interests implicating due process concerns are affected by an assignment to judicial duties. Accordingly, we reject Judge Avellino's argument of entitlement to an adversary proceeding, either before or after the assignment, to resolve factual questions. Even if Judge Avellino's assertions regarding Judge Herron's motivations are accepted as true for the sake of argument, there is no basis upon which his assignment can be cast in pejorative terms such as "retaliation" or "punishment" for the exercise of his rights to free speech and petition.

■■■■ We have thus far established that a judge has no right or interest deriving from constitution, statute, rule, seniority of service or otherwise to receive or continue in any assignment or type of assignment. We have also established that the assignment of Judge Avellino to the felony-waiver program was made under the administrative authority of this Court delegated to Judge Herron as Administrative Judge, and therefore review of that assignment for any reason is properly within the supervisory power of this Court.

5. At argument, counsel for Judge Avellino conceded that neither constitution, statute, nor rule establishes seniority as a consideration, much less a primary consideration, in the assignment of judges. He nevertheless continued to refer to Judge Avellino's years of service as a factor to be considered in weighing the reasonableness of the assignment to the felony waiver program. This is nonsense. Simply put, seniority carries with it no entitlement to preferential consideration.

In 1977, this Court had occasion to examine the relationship between our inherent supervisory powers and the procedure for discipline of judges established in Article V, Section 18 of the 1968 Constitution. In *In re Franciscus*, 471 Pa. 53, 369 A.2d 1190 (1977), a district justice who had been suspended by order of this Court upon his indictment in federal court sought to have the order vacated. He argued that this Court could only act following a recommendation from the Judicial Inquiry and Review Board under Section 18. We rejected this argument, declaring that "Article 5, Section 18 in no way attempts to revoke or diminish the inherent authority of this Court to exercise its superintendency powers over the lower judiciary." 471 Pa. at 56, 369 A.2d at 1191–92. After extensively reviewing the history and nature of those powers, we observed that the suspension "was not meted out as a form of punishment. Rather, we are constrained to exercise our powers of supervision under the circumstances present here in order to guard and protect '... the dignity and authority of the court....'" *Id.* at 62, 369 A.2d at 1195 (footnote and citation omitted).

Judge Avellino argues that "The text and context of the 1993 amendments to Article V, Section 18, manifest an intent to limit the Supreme Court's authority to impose discipline *de novo*, and its jurisdiction to review decisions of the Court of Judicial Discipline imposing sanctions." Brief at p. 20. The 1993 amendments, however, altered the mechanism for investigating and adjudicating charges of judicial misconduct by abolishing the Judicial Inquiry and Review Board and creating the Judicial Conduct Board and the Court of Judicial Discipline. Given our clear holding sixteen years earlier in *Franciscus* that our supervisory power was neither revoked nor diminished by Section 18, had the people intended to revoke or diminish that power in amending Section 18 the amendment would have explicitly so provided. Nowhere in the amended Section 18 is such an intention expressed or even implied.[6]

---

6. Conversely, of course, action by this Court pursuant to our supervisory power in no way affects the independent authority of the Judicial

■ In this context, Judge Avellino's refusal to comply with the assignment, and independently his continued refusal to comply with the assignment after having been directly and unambiguously ordered to do so by this Court, can only be characterized as unjustified defiance of legitimate authority.[7] If our historical and constitutional powers of supervision are to be effective, when such affronts occur it is necessary that we consider the imposition of sanctions.

Accordingly, we enter the following Order.

## ORDER

PER CURIAM.

AND NOW, this 7th day of February, 1997, the Application for Leave to File Application Under Seal is denied. The Prothonotary is directed to file the subject Application for Disqualification contained therein on the docket at this number. The Application for Disqualification is referred to Mr. Justice Nigro for disposition. *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority*, 507 Pa. 204, 220–22, 489 A.2d 1291, 1299–1300 (1985).

## ORDER

AND NOW, this 7th day of February, 1997, the Motion for Recusal, the Demand for Jury Trial, and the Application for Formal Discovery are denied. The parties are directed to appear before the Court during session in Pittsburgh on

Conduct Board to investigate the same conduct for purposes of disciplinary action pursuant to Article V, Section 18.

7. In arguing that a judge may refuse to obey an unconstitutional order, Judge Avellino puts forward the example of an administrative order directing judges to sign blank search warrants for police to use at night in order to eliminate the need to have a magistrate available at night. There is clearly a difference between an administrative order directing a judge to perform what he believes is an illegal act and an order that a judge believes to be beyond the authority of the administrative judge to enter. In either case, however, recourse may be had in this Court, which bears the ultimate responsibility for the proper administration of the judicial system. The suggestion that each judge may in the first instance determine unilaterally the appropriateness of complying with an administrative order invites chaos and is simply untenable.

Tuesday, March 4, 1997, at 1:30 p.m., at which time the Court will consider whether sanctions, e.g., no further action by the Court, private or public reprimand, suspension with or without pay, or removal from office, should be imposed upon the Respondent. The parties shall submit briefs in accordance with a schedule to be established by the Prothonotary.