17 A.3d 869

**In re Maryesther S. MERLO, Magisterial District Judge, Magisterial District 31–1–02, Lehigh County.**

**Petition of Maryesther S. Merlo.**

Supreme Court of Pennsylvania.

Feb. 10, 2011.

600

Samuel C. Stretton, Esq., Law Office of Samuel C. Stretton, West Chester, for Petitioner.

Francis J. Puskas II, Esq., Joseph A. Massa Jr., Esq., Harrisburg, for Respondent Judicial Conduct Board.

A. Taylor Williams, Esq., Zygmont A. Pines, Esq., Philadelphia, for Respondent AOPC.

## OPINION

PER CURIAM.

Presently before the Court are Petitioner's "Motion to Strike the Order of Interim Suspension" and Application for Leave to Supplement that Motion. We grant the Application for Leave to Supplement that Motion, but for the reasons that follow, upon consideration of the Motion and the Supplement, we deny the Motion to Strike the Order of Interim Suspension.

On November 4, 2010, the Judicial Conduct Board ("JCB") filed charges against Maryesther Merlo ("Petitioner"), a Lehigh County magisterial district judge, charging Petitioner with violating numerous Rules Governing Standards of Conduct of Magisterial District Judges. Petitioner's alleged misconduct includes chronic absenteeism from work, which resulted in hearings being repeatedly rescheduled. It was also alleged that she was abusive to parties and attorneys who appeared before her.

On December 22, 2010, this Court entered an order noting that the JCB had found probable cause to file formal charges against Petitioner. That order directed that Petitioner was suspended, with no diminution in salary or benefits, until further order of this Court. The order also provided that it

was without prejudice to Petitioner to petition this Court to vacate or modify the interim suspension.

Petitioner has now petitioned to strike the interim suspension. She first argues that our Court has no authority to enter interim suspensions of jurists, claiming that the Pennsylvania Constitution precludes us from entering such orders. She reasons that per Article V, § 18 of the Pennsylvania Constitution, we may only review decisions of the Court of Judicial Discipline ("CJD"). She asserts that the sole authority to enter an interim suspension of a jurist is granted to the CJD via Article V, § 18(d)(2). As an alternative, she asserts that even if we do have the power to enter interim suspensions, that power is limited to those situations where the jurist is accused of dereliction of judicial administrative duties.

The Pennsylvania Constitution provides that this Court "shall exercise general supervisory and administrative authority over all the courts . . . ." PA. CONST. art. V, § 10(a). This is a broad authority. This Court is entrusted with safeguarding the integrity of the judicial system; even the appearance of judicial impropriety can be cause for exercise of our King's Bench jurisdiction. *See Joseph v. Scranton Times*, 603 Pa. 146, 982 A.2d 1223 (2009).

The 1993 amendments to the Pennsylvania Constitution abolished the Judicial Inquiry and Review Board and created the JCB and the CJD. Those amendments did not, however, purport to affect, restrict, or suspend *sub silentio* our King's Bench powers. We have noted that "[t]he 1993 amendments . . . altered the mechanism for investigating and adjudicating charges of judicial misconduct. . . ." *In Re: Avellino*, 547 Pa. 385, 690 A.2d 1138, 1143 (1997). But, the *Avellino* Court explicitly and unequivocally stated that those amendments did not evidence a revocation, or a diminishment, of our constitutional power to supervise the courts. Our interim suspension order was not entered in the course of our investigating and adjudicating the pending misconduct charges against Petitioner; we are engaged in no such disciplinary endeavor. Rather, our order was entered to ensure the

smooth functioning of the administration of justice in this Commonwealth during the pendency of the misconduct charges. Moreover, the interim suspension order does not punish Petitioner for the alleged misconduct. No final decision has been made regarding those allegations, and our interim suspension order does not purport to decide any issues related to the pending misconduct charges.

 Petitioner's argument that Article V, § 18(d)(2) limits our authority is unpersuasive. That constitutional provision delineates the CJD's authority to impose suspensions upon judicial officers as part of the disciplinary process; it does not purport to limit our authority to supervise the court system, which is a different matter. Additionally, Petitioner's argument that we can wield our King's Bench authority to impose an interim suspension only when a jurist is accused of an administrative impropriety is baseless. The fact that some prior cases involved that circumstance does not serve to cabin our supervisory authority. Moreover, in point of fact, this Court has suspended a jurist for other reasons affecting the administration of justice. *See, e.g., In re: Joyce*, 301 JAD 1 (order dated 8/17/2007) (jurist indicted for crimes stemming from his fraudulent insurance claim placed on interim suspension). There is no logical rationale that would explain such a limitation upon our King's Bench powers.

 Petitioner's second line of argument, framed by her counsel in intemperate language that is particularly inappropriate given the subject matter at issue, Motion at 5–6, is that her due process rights were violated when we entered the interim suspension order. She states that prior to a suspension order being entered, a rule to show cause should have issued; she cites *Avellino* and *McFalls*, where rules to show cause were issued prior to our action. She also asserts that a federal trial court's decision in *Gershenfeld v. Justices of the Supreme Court of Pennsylvania*, 641 F.Supp. 1419 (E.D.Pa. 1986) compels us to conduct a timely hearing on the interim suspension.

Contrary to Petitioner's argument, *Avellino* and *McFalls* do not command that a rule to show cause must issue prior to entry of an interim suspension order. In examining what process is due, we must keep in mind that due process is a "flexible [concept] and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Determining what process is due in a particular situation

generally requires consideration of three distinct factors: [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (citation omitted).

Petitioner does not identify with any specificity what private interest has been affected by our interim suspension order. Her private interests in generating an income and retaining her employee benefits were specifically preserved in our order. Petitioner points to no other cognizable interest that was affected. Additionally, the interim suspension order invited Petitioner to contest the suspension. This procedure, while ensuring the integrity of the judiciary, does not run a significant risk of an erroneous deprivation of a private cognizable interest, if Petitioner were able to identify one. Finally, the public interest in safeguarding the integrity of the judicial system is a significant one. The JCB, following investigation, has determined that the allegations of judicial misconduct against Petitioner are founded and has charged her with various violations. Those charges are a matter of public record. While the issue of whether these charges can be proven and formal judicial discipline is warranted has yet to be resolved by the CJD, that is not the only issue raised by the existence of these charges. As a judicial officer herself,

Petitioner well knows, or should know, of the imperative to safeguard the integrity of the judicial system while the prosecution of judicial misconduct charges advances. The public interest in minimizing the disruption necessarily occasioned by the pendency of judicial misconduct charges on the operation of the judicial system is significant, and requires immediate action.

The *Gershenfeld* case involving the suspension of a lawyer, cited by Petitioner, does not support a different result. *Gershenfeld*, as a federal trial court decision, does not bind this Court. *See Commonwealth v. Jones,* 597 Pa. 286, 951 A.2d 294, 301 (2008) (citation omitted) (this Court is not bound by decisions of federal courts inferior to the United States Supreme Court). Moreover, in *Gershenfeld,* the private interest affected by the governmental action was significant. The suspended attorney there could not practice law, and thus could not earn an income in the profession in which he had worked for more than three decades. In contrast, Petitioner's pay and benefits specifically were preserved by our interim suspension order.

We grant the Application for Leave to Supplement, and, for the foregoing reasons, we deny the "Motion to Strike the Order of Interim Suspension."