### In re OWNERSHIP OF NOTES AND REPRODUCTION OF TRANSCRIPTS.

### Carolee Medico, Appellant.

Commonwealth Court of Pennsylvania.

Argued Feb. 9, 2000.

Decided Dec. 8, 2000.

Samuel C. Stretton, West Chester, for appellant.

Christopher S. Lucas, Harrisburg, for appellee.

Before DOYLE, President Judge, McGINLEY, SMITH, FRIEDMAN, KELLEY, FLAHERTY and LEADBETTER, Judges.

DOYLE, President Judge.

Carolee Medico, Prothonotary of Luzerne County, appeals an administrative order issued by the President Judge of the Court of Common Pleas of Luzerne County, the Honorable Joseph M. Augello, governing the management of transcripts of court proceedings.

## BACKGROUND

Sometime prior to May 26, 1999, Medico allowed notes of testimony filed as of record in the Prothonotary's office to be copied on a Xerox machine by anyone who requested them. The court reporter who had recorded the notes of testimony complained about this procedure to President Judge Augello, who responded by issuing the following administrative order:

### *ADMINISTRATIVE ORDER*

#### *1999–001*

NOW THIS 26th day of May, 1999, pursuant to Pa.R.J.A. No. 5000.13 [1] it is hereby **ORDERED AND DIRECTED:**

---

**1.** Rule 5000.13, Pa.R.J.A. No. 5000.13, entitled **"OWNERSHIP OF NOTES; SAFE-** **GUARDING; RETENTION,"** provides:

1. In all cases, the court shall have the original transcript available for its own use. No person except the court reporter shall reproduce the original or a copy of the transcript by copy machine, electronic data reproduction or other methods of image reproduction. Any person making such a reproduction is liable to the reporter for the cost, and shall be liable for any other costs or damages as provided for by law.

2. The prothonotary, clerk of courts and register of wills shall not permit the original transcript or a copy thereof to leave their custody except for use by a judge or by order of court or to send them to an appellate court, as required by law or rules of court. Copying is prohibited not only by means of paper reproduction or copy machine but also by any other method of reproduction including electronic data transfer.

(Administrative Order, May 26, 1999, Exhibit B of Appellant's brief.)

After the preceding order was entered, Medico appealed the May 26, 1999 order to this Court invoking our appellate jurisdiction. We reviewed the appeal and transferred the matter to the Supreme Court, concluding that the matter was within the Supreme Court's superintendency powers. However, the Supreme Court transferred the matter back to this Court.

Subsequently, President Judge Augello entered an opinion in this matter, holding that the May 26th administrative order was properly issued in his capacity as President Judge and that it was within the scope of his authority to supervise Court personnel, which includes court reporters. President Judge Augello also concluded that Medico did not have standing to object to or fail to comply with the May 26th order, reasoning as follows:

(a) The stenographic notes, tapes, or other media used by a court reporter to record a proceeding in or for a court shall be public property, subject, however, to the vested property interest of the reporter described in these rules.

The said Administrative Order was duly promulgated under authority given to this court under the Pennsylvania Rules of Judicial Administration and is concerned with the internal operating procedures which affect the Common Pleas Courts of Luzerne County.

The said Prothonotary of Luzerne County who is not a member of the Judiciary of this Commonwealth has not sought judicial review of our aforesaid Administrative order in the Luzerne County Courts, but, on June 28, 1999 filed a Notice of Appeal to the Honorable Commonwealth Court. There has been no legal proceeding of any nature filed in the Luzerne County Court of Common Pleas.

It is our opinion under the circumstances and state of the record that the Prothonotary of Luzerne County has no legal authority to contest the said Judicial Administrative Order of May 26, 1999.

(Common Pleas Court opinion at 7.)

### ISSUES ON APPEAL

In this appeal, Medico raises three issues for our review: (1) the Administrative Order was an improperly promulgated local rule because it does not comply with Pa.R.C.P. No. 239 and is in conflict with the Rules of Judicial Administration; (2) Medico does have standing to challenge the Administrative Order; and (3) the Administrative Order conflicts with the Act of June 21, 1957, P.L. 390, as amended, 65 P.S. §§ 66.1–66.4, commonly known as the Right to Know Act.

In response, the Pennsylvania Court Reporters Association (the Association), participating in this matter as a friend of the Court, raises several objections to Medi-

(b) Each judicial district shall make adequate and proper provision for storage and safeguarding of notes and tapes. Such provision may involve microfilming of paper tapes, duplication of electronic recordings, permitting the reporters to store and protect the materials, etc.

co's appeal: (1) the May 26th order is not a final and appealable order; (2) Medico does not have standing to appeal the order; (3) the issues raised in the Notice of Appeal are not reviewable, and (4) in the absence of adjudicative facts, this Court should not decide the merits of the appeal.

## DISCUSSION

### (A) Is the May 26, 1999 administrative order an appealable order?

The Association contends that the May 26, 1999 order is not an appealable order under Section 762(a) of the Judicial Code, 42 Pa.C.S. § 762(a), which provides, in relevant part, as follows:

(a) **General Rule.**—...[T]he Commonwealth Court shall have exclusive jurisdiction of appeals from *final orders* of the courts of common pleas in the following cases:

(1) Commonwealth civil cases....

(2) Governmental and Commonwealth regulatory criminal cases....

(3) Secondary review of certain appeals from Commonwealth agencies....

(4) Local government civil and criminal matters....

(5) Certain private corporation matters....

(6) Eminent domain....

(7) Immunity waiver matters....

. . . .

(Emphasis added.) The Association argues that the May 26th order cannot be appealed to this Court under Section 762(a), because it does not resolve a dispute involving one of the seven types of cases listed in the statute, and because it is not a final order.

■ The Association is correct that the May 26th administrative order does not fit into any of the seven categories of cases encompassed by Section 762(a) of the Judicial Code, and it is clear that the order was not entered to resolve a dispute litigated in the Common Pleas Court. Instead, President Judge Augello issued the order to implement an executive decision he made in his capacity as the President Judge and administrator of the Court of Common Pleas.[2] Thus, the May 26th order is not within this Court's appellate jurisdiction under Section 762(a) of the Judicial Code.

■ Moreover, we agree with the Association that the May 26th order is not a final order. The jurisdiction of the Commonwealth Court to hear appeals is limited to final orders unless otherwise permitted by statute. *Monzo v. Department of Transportation,* 124 Pa.Cmwlth. 360, 556 A.2d 493 (1989). The term final order is defined by Pa.R.A.P. 341 as any order that (1) disposes of all claims and parties, (2) is expressly defined as final by statute, or (3) is determined by a court or governmental unit to be final in order to facilitate the resolution of a case. In this matter, because the May 26th order was entered for the sole purpose of implementing an administrative directive of President Judge Augello, there was no judicial proceeding before the Common Pleas Court involving disputed claims or adverse parties. No case, action or petition was finally resolved by the May 26th order. Further, while our research has uncovered cases where

2. The use of orders for administrative purposes is consistent with the power granted to Pennsylvania courts to "make such rules and *orders of court* as the interest of justice or *the business of the court* may require." Section 323 of the Judicial Code, 42 Pa.C.S. § 323 (emphasis added). And, President Judge Augello's actions were in accord with the statutory authority granted to president judges, which is:

(1) *Be the executive and administrative head of the court, supervise the judicial business of the court, promulgate all administrative rules and regulations,* make all judicial assignments, and assign and reassign the personnel of the court[,] available chambers and other physical facilities.

(2) Exercise the powers of the court under section 2301(a)(2) [of the Judicial Code, 42 Pa.C.S. § 2301] (relating to the appointment of personnel).

Section 325 of the Judicial Code, 42 Pa.C.S. § 325(e)(1), (2) (emphasis added).

an administrative order was reviewed by an appellate court, the administrative orders were considered within the context of an appeal from an order finally deciding a case. The administrative orders were not appealed directly or treated by the appellate courts as final orders. *See e.g. Murphy v. Murphy*, 715 A.2d 477 (Pa.Super.1998) (in an appeal from a final order in a divorce action, the Superior Court determined that an administrative order was invalid); *Kline v. Kline*, 708 A.2d 503 (Pa.Super.1998) (in an appeal from an order holding a party in contempt, Superior Court overturned an administrative order mandating that persons attend a divorce seminar).

Therefore, because the May 26, 1999 order is not a final order and did not resolve a case within the scope of Section 762(a) of the Judicial Code, we must conclude that the order is not appealable.[3]

### (B) Does Medico have standing to appeal?

Even if we had concluded that the administrative order was appealable, we would nonetheless conclude that Medico does not have standing to appeal from the May 26, 1999 administrative order.

Under Pa.R.A.P. 501, "any *party* who is *aggrieved* by an appealable order ... may appeal therefrom." (Emphasis added.) Thus, to have standing to appeal, the appellant must have been a party to the proceedings below and must be aggrieved by the appealable order. *Silver Spring Township v. Pennsy Supply, Inc.*, 149 Pa.Cmwlth. 314, 613 A.2d 108 (1992). The term "party" is defined as a "person who commences or against whom relief is

sought in a matter," and the term includes a represented person's counsel. *Id.* at 110 (quoting Section 102 of the Judicial Code, 42 Pa.C.S. § 102). An aggrieved party is one who has suffered harm that is direct, immediate, and substantial. *Building and Industry Association of Lancaster County v. Manheim Township*, 710 A.2d 141 (Pa. Cmwlth.1998).

Medico did not commence any legal proceedings before the Common Pleas Court, and no one else commenced legal proceedings seeking relief from her. For these reasons, Medico does not qualify as a party as defined by Section 102 of the Judicial Code.

Medico argues that she is aggrieved by the May 26th order for the reason that she has a statutory obligation to maintain documents filed in the Common Pleas Court and the order hinders her ability to make records available to the public. However, since no proceedings were conducted below, there are no facts, either pled or found, revealing a single instance where Medico was precluded by the May 26th order from providing a member of the public with a record in her custody or showing that Medico's statutory obligation to maintain court records had been compromised. Hence, we conclude that Medico did not sustain a direct, immediate, and substantial harm from the May 26th order.

While Medico's argument suggests that she may be subjected to some future harm as a result of her inability to make public records available to persons who seek them, the possibility of future harm is insufficient to confer standing. *Official Court Reporters of the Court of Common Pleas of Philadelphia County v. Pennsyl-*

---

**3.** Considering Medico's assertion that President Judge Augello's order was an invalid local rule of court, we note that in a Missouri Supreme Court case involving a direct challenge to the validity of a local rule of court, *Gregory v. Corrigan*, 685 S.W.2d 840 (Mo. 1985), the matter was initiated by a lawsuit seeking equitable relief. In *Gregory*, after the trial court found in favor of the plaintiffs, granting them declaratory and injunctive re-

lief, the trial court's order was appealed to the Missouri Supreme Court. Similarly, in *Whitehouse v. United States District Court for the District of Rhode Island*, 53 F.3d 1349 (1st Cir.1995), the First Circuit Court of Appeals stated that the proper method of challenging a federal local rule is to file an action in the District Court for declaratory and injunctive relief.

*vania Labor Relations Board,* 502 Pa. 518, 467 A.2d 311 (1983). Furthermore, in our view, any injury caused by the inability of Medico to release public records would be primarily inflicted on the person who is denied access, and not on Medico.

Therefore, we conclude that Medico does not have standing to appeal the May 26, 1999 order. *Silver Spring Township.*

## CONCLUSION

Because the May 26, 1999 administrative order of President Judge Joseph Augello is not a final, appealable order, and because Medico lacked standing to appeal, the appeal will be quashed.

## ORDER

**NOW,** December 8, 2000, the appeal in the above-captioned matter is hereby quashed.

Judge SMITH dissents.

KELLEY, Judge, dissenting.

I respectfully dissent. This case presents a unique issue, stands in a unique procedural posture, and implicates a unique facet of our constitutional duty.

The Pennsylvania Constitution created, as the bedrock of our Commonwealth, three equal but separate branches of government, and vested these branches with certain exclusive rights, duties and powers.[1] As in our Federal Constitution the separation is not distinct in that overlapping powers endow each branch with the ability, and the inherent duty, to check and balance the powers of the others.[2] It is axiomatic that the respective branches also have the duty to check and balance the power vested within their own spheres.

As one natural interpolation of our Constitutionally-mandated duty to check the power vested in the Judiciary branch, and to uniformly administer the powers and duties assigned therein, the Pennsylvania Constitutional Convention of 1967–68 articulated a vision of a "unified judicial system" for our Commonwealth. After ratification by our elector citizens, the new Judiciary Article advanced by the Convention mandated a unification of the judicial system embracing all of our courts, at every level of our Commonwealth, and assigning to the Supreme Court supervisory and administrative authority. Pa. Const. art. V, §§ 1, 10. Even before the adoption of the amendment creating the unified judicial system, our Supreme Court had held that "[a] part of the duty of this court is to keep all inferior jurisdictions within the bounds of their authority".[3] On the heels of the 1967–68 Convention our Supreme Court noted that the Judiciary possesses inherent power to "carry out its mandated responsibilities, and its powers and duties to administer Justice ..."[4] As we have recently written, and more relevant to the case *sub judice,* "[t]he courts of this Commonwealth under our Constitution have certain inherent rights and powers to do all such things as are reasonably necessary for the administration of justice."[5] Such inherent rights and powers carry with

---

1. This doctrine of the separation of powers is inherent in three sections of our Constitution: Article II, § 1 (creating, and vesting power in, the legislative branch); Article IV, § 2 (creating, and vesting power in, the executive branch), and; Article V, § 1 (creating, and vesting power in, the judicial branch). *See generally* John M. Mulcahey, *Separation of Powers in Pennsylvania: The Judiciary's Prevention of Legislative Encroachment,* 32 Duq. L.Rev. 539, 539–541 (1994).

2. *See* James Madison, *The Federalist No. 47,* at 301 (Clinton Rossiter ed., 1961).

3. *Meadville Park Theatre Corp. v. Mook,* 337 Pa. 21, 23, 10 A.2d 437, 439 (1940).

4. *Commonwealth v. Tate,* 442 Pa. 45, 52, 274 A.2d 193, 197 (1971), *certiorari denied, Tate v. Pennsylvania ex rel. Jamieson,* 402 U.S. 974, 91 S.Ct. 1665, 29 L.Ed.2d 138 (1971).

5. *L.J.S. v. State Ethics Commission,* 744 A.2d 798, 800 (Pa.Cmwlth.2000).

them a concomitant duty to insure that we remain within the sphere of our authority.

As a member of the unified judicial system, we are responsible to be diligent in our review, when necessary, of the unilateral promulgation of rules such as the one in this case. Our duty to oversee the exercise of our inherent powers must include efforts to ensure that the Courts of Common Pleas promulgate no more than the most necessary of rules. In short, as the branches of our government are Constitutionally charged with checking and balancing each other's boundaries of authority, we have a duty to check and balance the exercise of our own internal authority, including that of the lower courts. This duty requires us to respond to the merits of a challenge of an administrative order implementing a local rule such as the one initiated in this case.

Our Commonwealth's appellate courts have previously examined local procedural rules with an eye towards those rules' consonance with our unified judicial system.[6] The rule promulgated[7] in the Court of Common Pleas in this case is not a rule governing filing procedure or procedure at trial, as are those rules examined in prior cases and cited as persuasive authority by Appellant. The rule at issue is a unique rule placing restrictions upon access to public court records. The unique character of this rule, the challenge thereof by the Prothonotary, and the rule's operation beyond the boundaries of an adversarial action, position the Appellant and this case beyond our traditional notions of standing. Further, we require no record to review this challenge as the questions posed are purely legal, and our review is therefore plenary.[8]

Additionally, I note that this case, when originally filed, was transferred by this Court to the Supreme Court. The Supreme Court, under its Kings Bench powers, has a power of general superintendency over inferior tribunals that may be exercised where no matter is pending in a lower court. *In re Avellino*, 547 Pa. 385, 690 A.2d 1138 (1997). Had the Supreme Court considered this case improvidently filed, or falling outside the bounds of Commonwealth Court's jurisdictional scope, the Supreme Court could have quashed the appeal or remanded the case for trial.[9] The Supreme Court chose not to exercise any of those procedural options. Instead, the Supreme Court, by order dated July 6, 1999, transferred the case back to this Court. Inherent in the Supreme Court's transfer of this case to our Court is a directive for us to address it. Inherent in our unified judicial system's duty to check and balance the power vested therein is a duty to address the merits of this rule's legitimacy.

This case defies our traditional standards of procedural posture, adversarial parties, standing, and finality.[10] As a

---

**6.** *See e.g. Equipment Finance, Inc. v. Toth,* 328 Pa.Super. 351, 476 A.2d 1366, 1369 (1984) (Local procedural rule held to not be "in any way inimical to our unified judicial system under the Constitution of 1968 nor to the statewide practice of law under our Supreme Court's general rules.").

**7.** Rulemaking is a core function of the Judiciary. Pa. Const. art. V, § 10(c).

**8.** *Tomaskevitch v. Specialty Records Corp.,* 717 A.2d 30 (Pa.Cmwlth.1998), *petition for allowance of appeal denied,* 559 Pa. 710, 740 A.2d 236 (1999).

**9.** *Cf., e.g., Bruno v. Elitzky,* 515 Pa. 47, 526 A.2d 781 (1987) (Superior Court order vacated for lack of jurisdiction, and case remanded for trial, where appealed order concerning local rule was held not to be one of the seven specified orders enumerated in Pa.R.A.P. No. 311(a) permitting appeal as of right of interlocutory order).

**10.** "[A] finding of the finality of an order is a judicial conclusion which results from a practical rather than a technical interpretation." *Bruno* at 50, 526 A.2d 781, citing *Bell v. Beneficial Consumer Discount Co.,* 465 Pa. 225, 348 A.2d 734 (1975).

member of our Commonwealth's unified judicial system, and in light of the Supreme Court's transfer of the case back to this Court, we have an inherent responsibility to review the Court of Common Pleas's unilateral order to insure that it falls within their sphere of authority.