**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| IN RE: THE HONORABLE STEPHANIE DOMITROVICH | : | No. 9 WAP 2021 |
| | : | |
| | : | Appeal from the Administrative |
| | : | Order of the Court of Common Pleas |
| APPEAL OF: THE HONORABLE STEPHANIE DOMITROVICH | : | of Erie County entered December 3, |
| | : | 2019 at A.D. No. 90055 of 2019. |
| | : | |
| | : | SUBMITTED: August 23, 2021 |
| | : | |
| | : | |
| IN RE: THE HONORABLE STEPHANIE DOMITROVICH | : | No. 10 WAP 2021 |
| | : | |
| | : | Appeal from the Administrative |
| | : | Order of the Court of Common Pleas |
| APPEAL OF: LAKE ERIE COLLEGE OF OSTEOPATHIC MEDICINE AND AARON E. SUSMARSKI | : | of Erie County entered December 3, |
| | : | 2019 at A.D. No. 90055 of 2019. |
| | : | |
| | : | SUBMITTED:  August 23, 2021 |

**OPINION**

**CHIEF JUSTICE BAER**                                    **DECIDED:  AUGUST 23, 2021**

This matter involves a challenge to an administrative order issued by a president judge that, *inter alia*, disqualifies a common pleas court judge from adjudicating single-party petitions filed by the judge's son pursuant to 22 Pa.C.S. § 501 (addressing the appointment of private police by nonprofit corporations).  For the reasons set forth herein, we hold that the administrative order is not appealable.  We further decline to exercise King's Bench jurisdiction over this purely administrative matter and, instead, invoke this Court's general supervisory and administrative authority over the courts afforded by Article V, Section 10(a) of the Pennsylvania Constitution.  Exercising this authority, we

intend to dispose of the controversy internally, as is typical of administrative court disputes.

*I. Background*

The underlying facts of this case are not in controversy.[1] In 2002, Lake Erie College of Osteopathic Medicine ("LECOM") petitioned the Court of Common Pleas of Erie County to establish a private police force pursuant to 22 Pa.C.S. § 501, which was granted.[2] Since that time, LECOM has petitioned the common pleas court for the appointment of additional officers.[3] Relevant here, from March of 2016 through November of 2019, the Honorable Stephanie Domitrovich had signed several orders, granting petitions filed by LECOM to appoint the private police officers. Judge Domitrovich's son, Attorney Aaron Susmarski, represented LECOM in these matters.

On November 12, 2019, a fellow member of the judiciary informed the Honorable John J. Trucilla, then-President Judge of the Court of Common Pleas of Erie County ("President Judge Trucilla"), that Judge Domitrovich had engaged in the repeated practice of signing orders and granting her son's petitions filed on behalf of LECOM. Judge Trucilla further became aware that Judge Domitrovich personally had signed her son's

---

[1] We glean the facts presented from the administrative order itself and the Pa.R.A.P. 1925(a) opinion filed by former-President Judge John J. Trucilla of the Court of Common Pleas of Erie County on February 26, 2020, in support of the challenged administrative order.

[2] Relevant here, Section 501 provides that the court of common pleas, upon application by a nonprofit corporation maintaining buildings or grounds open to the public, "may by order" appoint persons to be police officers for the corporation. 22 Pa.C.S. § 501.

[3] In each of its petitions, LECOM averred that it is a nonprofit corporation that operates a private, nonprofit medical college, pharmacy school, post-baccalaureate science program and master's degree program, which maintains sixteen buildings open to the public. *See e.g., In re Lake Erie Osteopathic Medicine - Appointment of Private Police Officer*s, No. 90008-2017 (filed 2/7/2017).

name on a LECOM petition, personally filed some of the petitions on her son's behalf, and personally submitted filing fees in relation to some of the petitions.

On November 25, 2019, President Judge Trucilla orchestrated a private meeting between court liaisons and Judge Domitrovich to resolve the matter. Receiving no assurance from Judge Domitrovich that she would stop facilitating and adjudicating petitions filed by her son, on December 3, 2019, President Judge Trucilla issued the administrative order now challenged ("Administrative Order" or "Order").

The Order stated that pursuant to Pennsylvania Code of Judicial Conduct Rules 1.2 ("Promoting Confidence in the Judiciary")[4] and 2.11 ("Disqualification"),[5] Judge

---

[4] Rule 1.2 provides that "[a] judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." Pa. Code of Judicial Conduct Rule 1.2.

[5] Rule 2.11 provides, in relevant part:

> (A) A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:
>
>> (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding.
>>
>> (2) the judge knows that . . . a person within the third degree of relationship . . . is: . . . acting as a lawyer in the proceeding.
>
> *                    *                    *
>
> (C) A judge subject to disqualification under this Rule, other than for bias or prejudice under paragraph (A)(1), may disclose on the record the basis of the judge's disqualification and may ask the parties and their lawyers to consider, outside the presence of the judge and court personnel, whether to waive disqualification. If, following the disclosure, the parties and lawyers agree, without participation by the judge or court personnel, that the judge should not be disqualified, the judge may participate in the proceeding. The agreement shall be incorporated into the record of the proceeding.

Pa. Code of Judicial Conduct Rule 2.11.

Domitrovich is "DISQUALIFIED from receiving, considering, and/or signing any Motion or Pleading by and through her son, Aaron E. Susmarski, Esq.," including those submitted on behalf of his client, LECOM. Administrative Order, A.D. No. 90055 of 2019 (filed 12/3/2019), at 1. The Order also set forth general protocols for all members of the Erie County bench, prohibiting the personal signing or filing of petitions, motions, pleadings, verifications or certifications brought before the jurist.[6] *Id.* Additionally, the Order directed that "no member of this bench shall *sua sponte* request the services of a retired Senior Judge for the purposes of reassigning that sitting Judge's assigned caseload or docket." *Id.* at 2. Finally, the Order stated that President Judge Trucilla was compelled to issue the order to protect the integrity of the bench and to avoid any appearance of impropriety pursuant to Pennsylvania Code of Judicial Conduct Rules 2.15(C) and (D).[7] Administrative Order at 2.

Judge Domitrovich, LECOM, and Attorney Susmarski ("Designated Appellants") filed notices of appeal from the Administrative Order, seeking review in the Commonwealth Court's appellate jurisdiction. *See In re Domitrovich*, 1844 and 1845 CD

---

[6] The order noted that marriage licenses were an exception to this general directive.

[7] Rule 2.15(C) and (D) provide as follows:

> (C) A judge who receives information indicating a substantial likelihood that another judge has committed a violation of this Code shall take appropriate action.

> (D) A judge who receives information indicating a substantial likelihood that a lawyer has committed a violation of the Pennsylvania Rules of Professional Conduct shall take appropriate action.

Pa. Code of Judicial Conduct Rule 2.15(C), (D). The *Comment* to Rule 2.15 provides that "[a]ppropriate action may include, but is not limited to, communicating directly with the judge who may have violated this Code, communicating with a supervising judge, or reporting the suspected violation to the appropriate authority or other agency or body." The *Comment* similarly describes "appropriate action" in connection with a lawyer's suspected violation of the Code as including communicating with the lawyer or reporting the suspected violation to the appropriate authority or other agency or body.

2019. They contended, *inter alia*, that the Administrative Order constituted an unlawful *ex parte* adjudication of violations of the Code of Judicial Conduct against a fellow judge of the same court without a hearing, thereby usurping the jurisdiction of the Court of Judicial Discipline and violating both due process and the right to reputation under Article I, Section 1 of the Pennsylvania Constitution. Designated Appellants further asserted that Rule 2.11's disqualification provision was inapplicable to matters involving a non-adversarial, single-party proceeding, largely ceremonial in nature, such as the appointment of individuals as police officers for a non-profit corporation.

On February 26, 2020, President Judge Trucilla issued an 84-page opinion pursuant to Pa.R.A.P. 1925(a), setting forth the reasons for the issuance of his Administrative Order. Therein, he opined that the Commonwealth Court should quash the appeal for lack of jurisdiction because the Administrative Order was not a final order resulting from a judicial proceeding that disposed of disputed claims and parties. Rule 1925(a) Opinion, 2/26/2020, at 2. Instead, President Judge Trucilla maintained, he issued the Administrative Order pursuant to his supervisory and administrative powers as a president judge. *Id.* at 4 (citing 42 Pa.C.S. § 325(e) (providing that the president judge of a court is the executive and administrative head of the court, which supervises the judicial business of the court, promulgates administrative rules and regulations, and makes all judicial assignments)). He further concluded that Designated Appellants lacked standing to pursue the matter, as they were not aggrieved by the Order regulating the business of the trial court. *Id.* at 7-9.

Contrary to Designated Appellants' contentions, President Judge Trucilla did not view the Administrative Order as imposing disciplinary sanctions or encroaching upon the jurisdiction of the Court of Judicial Discipline. *Id.* at 42. Rather, he explained, he issued the Administrative Order pursuant to Rule 2.15(C), which, as noted, directs a judge who

"receives information indicating a substantial likelihood that another judge has committed a violation of [the Code of Judicial Conduct]" to take "appropriate action." Pa. Code of Judicial Conduct Rule 2.15(C). He found that Judge Domitrovich's adjudication of her son's petitions created a substantial likelihood of a violation of Rule 1.2 (prohibiting the appearance of impropriety) and Rule 2.11 (requiring disqualification where the judge knows that a person within the third degree of relationship is acting as a lawyer in a proceeding before her). Thus, President Judge Trucilla asserted, he took the "appropriate action" of issuing the Administrative Order to eliminate the longstanding appearance of impropriety, after previous efforts to remedy the situation proved ineffective. *Id.* at 35-36, 48-51, 59.

President Judge Trucilla rejected the contention that Rule 2.11's disqualification rule was inapplicable to a single-party, non-adversarial proceeding such as appointing an individual as a police officer for a non-profit corporation, finding that the rule, on its face, applies to all legal proceedings *Id.* at 74. He further reasoned that LECOM is not eligible to waive Judge Domitrovich's inherent conflict of interest under Rule 2.11, where it would benefit from that conflict. *Id.* at 65. President Judge Trucilla found that Judge Domitrovich has the affirmative responsibility of recognizing any conduct that might question her impartiality or create an appearance of impropriety. *Id.* at 64.

Designated Appellants served each of their notices of appeal on President Judge Trucilla and the district court administrator. *See* Pa.R.A.P. 906(a)(2),(4) (requiring an appellant to serve a notice of appeal on, *inter alia*, the judge of the court below and the district court administrator). The Commonwealth Court, however, did not list President Judge Trucilla and the district court administrator as parties, and no representative submitted a responsive filing on their behalf in the intermediate appellate court.

On March 12, 2020, the Commonwealth Court entered an order consolidating the appeals of Judge Domitrovich, LECOM, and Attorney Susmarski. The court directed Designated Appellants to address the issue of whether jurisdiction lies in the Supreme Court. In response, Designated Appellants suggested that the Commonwealth Court had appellate jurisdiction pursuant to Section 762(a)(5) of the Judicial Code because the Administrative Order affects LECOM, a nonprofit corporation. *See* 42 Pa.C.S. § 762(a)(5) (authorizing direct appeals to the Commonwealth Court from certain orders relating to nonprofit corporations). Alternatively, Designated Appellants posited that the court could transfer the matter to this Court pursuant to Section 722(3) of the Judicial Code because the matter involved the manner of service of a member of the judiciary. *See* 42 Pa.C.S. § 722(3) (affording the Supreme Court exclusive jurisdiction of appeals from final orders of the courts of common pleas in matters where, *inter alia*, "the manner of service" of "any member of the judiciary is drawn in question"). Finally, Designated Appellants tacitly acknowledged that the Administrative Order may not be appealable, but suggested that the court could view the notices of appeal as petitions for review addressed to the Commonwealth Court's original jurisdiction.

On April 16, 2021, the Commonwealth Court issued a *per curiam* memorandum opinion, transferring the consolidated appeals to this Court pursuant to Section 722(3) of the Judicial Code. The court reasoned that the Administrative Order called into question Judge Domitrovich's manner of service in her capacity as a member of the judiciary because it disqualified her from considering filings presented by her son. The court further acknowledged that Article V, Section 10 of the Pennsylvania Constitution confers exclusive authority upon the Pennsylvania Supreme Court to supervise all the courts.[8]

---

[8] Article V, Section 10(a) of the Pennsylvania Constitution states that this Court "shall exercise general supervisory and administrative authority over all the courts and justices

Due to its finding of lack of jurisdiction over the matter, the Commonwealth Court did not opine on the merits of the Administrative Order.

On May 25, 2021, this Court directed Designated Appellants to file memoranda addressing the issue of whether the Administrative Order constituted a final, appealable order. We further ordered the Administrative Office of Pennsylvania Courts to submit a memorandum on behalf of President Judge Trucilla regarding the appealability issue. The parties have complied with this Court's request, and we now turn to the limited question of whether President Judge Trucilla's order was appealable.

## II. Arguments

Designated Appellants offer several theories to advocate for this Court's review of the Administrative Order. Primarily, they assert that the Commonwealth Court was correct in concluding that the Administrative Order is directly appealable to this Court pursuant to 42 Pa.C.S. § 722(3), which, as noted, provides that "[t]he Supreme Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in . . . [m]atters where the qualifications, tenure or right to serve, or the manner of service, of any member of the judiciary is drawn in question."

Addressing the requisite element of a "final order" for appellate jurisdiction pursuant to Section 722(3), Designated Appellants observe that, as applicable here, a final order is any order that "disposes of all claims and of all parties." Designated Appellants' Joint Memorandum at 8 (citing Pa.R.A.P. 341(b)(1)). They contend that President Judge Trucilla entered the Administrative Order on the docket in the common pleas court, disposed of all claims of all the parties, and left no matter unresolved.

---

of the peace, including authority to temporarily assign judges and justices of the peace from one court or district to another as it deems appropriate." PA. CONST. art. V, § 10(a).

Designated Appellants acknowledge case law holding that administrative orders are not themselves final orders. *See* Designated Appellants' Joint Memorandum at 9-10 (citing *In re Avellino*, 690 A.2d 1138, 1140-41 (Pa. 1997) (observing there was no final, appealable order in relation to judicial assignments); *In re Ownership of Notes & Reprod. of Transcripts*, 763 A.2d 575 (Pa. Cmwlth. 2000) (holding that an administrative order prohibiting the copying of court transcripts was not a final, appealable order); and *In re Domestic Relations Hearing Room,* 796 A.2d 407 (Pa. Cmwlth. 2002) (holding that an administrative order regulating the use of a room in the courthouse was not appealable because it was not a final order)). They posit, however, that unlike orders involving judicial assignments, staffing, or the use of court resources, the Order issued by President Judge Trucilla did not involve a truly administrative matter but, rather, rendered findings of fact and adjudications of violations of the Code of Judicial Conduct, which are adjudicatory in nature and not administrative.

Designated Appellants rely upon *In re Silverman*, 90 A.3d 771, 778 (Pa. Cmwlth. 2014), where the Commonwealth Court held that an administrative order resolved finally the discrete legal issue of disputed counsel fees relating to a specific attorney in a post-conviction collateral mater. They argue that in the instant case the Administrative Order purported to resolve finally the legal issue of whether Judge Domitrovich's conduct violated the Code of Judicial Conduct. Designated Appellants reason that the challenged administrative orders in this case and in *Silverman* both involved the exercise of a judicial function, *i.e.*, fact-finding and the rendering of legal conclusions, as opposed to a purely administrative matter, and, thus, were appealable, final orders.

Designated Appellants allege that several other Pennsylvania cases have examined the nature and impact of an administrative order when deciding whether the order is final and appealable, rather than relying upon the label of the order as

"administrative." Designated Appellants' Joint Memorandum at 15-18 (citing *Troutman v. Court of Common Pleas (Admin. Order No. 1-MD-2003)*, 936 A.2d 1 (Pa. 2007) (reviewing an appeal of an order dismissing the court clerk's exceptions in a matter challenging the modification of a form utilized by particular criminal defendants); *Murphy v. Murphy*, 715 A.2d 477 (Pa. Super. 1998) (reviewing an appeal of an order dismissing a spouse's exceptions in a domestic relations matter and entering the master's report and recommendation as a final order); *Kline v. Kline*, 708 A.2d 503 (Pa. Super. 1998) (reviewing an appeal of an order sentencing a spouse to prison for contempt for failing to attend a seminar for divorcing or separating parents); and *In re Haberstroh*, 340 A.2d 603 (Pa. Cmwlth. 1975) (reviewing a president judge's order fixing new salaries for court-related employees)).

In Designated Appellants' view, an appeal is the only means by which to correct the Administrative Order that disqualified Judge Domitrovich for violating the Code of Judicial Conduct, thereby usurping this Court's authority, as well as that of the Court of Judicial Discipline, without affording the requisite due process. *See* Designated Appellants' Joint Memorandum at 22 (citing Article V, Section 18 of the Pennsylvania Constitution, which established the Judicial Conduct Board to receive and investigate complaints regarding judicial conduct and the Court of Judicial Discipline to determine the sanction, if any, to impose). They assert that if not vacated, the Administrative Order will disrupt the Pennsylvania judicial disciplinary system and threaten order and regularity in judicial proceedings.

In the event this Court concludes that the Administrative Order was not a final order, Designated Appellants alternatively contend that this Court can review the instant

controversy pursuant to: (1) our King's Bench power set forth in 42 Pa.C.S. § 502;[9] (2) our general supervisory authority over the courts under Article V, Section 10(a), *see* n.8 *supra*; (3) our extraordinary jurisdiction pursuant to 42 Pa.C.S. § 726;[10] or (4) our original jurisdiction to enter a writ of prohibition against the common pleas court under 42 Pa.C.S. § 721(2) to prevent an unlawful assumption of jurisdiction by that court.[11] Accordingly, Designated Appellants request that upon exercising one of the enumerated modes of authority or jurisdiction, we ultimately reverse, vacate, or strike the Administrative Order.

In response, President Judge Trucilla contends that this Court should quash the Designated Appellants' appeal because the Administrative Order is not a final, appealable

---

[9] Section 502 provides, in relevant part:

> The Supreme Court shall have and exercise the powers vested in it by the Constitution of Pennsylvania, including the power generally to minister justice to all persons and to exercise the powers of the court, as fully and amply, to all intents and purposes, as the justices of the Court of King's Bench, Common Pleas and Exchequer, at Westminster, or any of them, could or might do on May 22, 1722.

42 Pa.C.S. § 502.

[10] Section 726 states:

> Notwithstanding any other provision of law, the Supreme Court may, on its own motion or upon petition of any party, in any matter pending before any court or magisterial district judge of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause right and justice to be done.

42 Pa.C.S. § 726.

[11] Section 721(2) provides that the "Supreme Court shall have original but not exclusive jurisdiction of all cases of . . . [m]andamus or prohibition to courts of inferior jurisdiction." 42 Pa.C.S. § 721(2). A writ of prohibition is a common law writ of extremely ancient origin, the purpose of which is to "prevent an inferior judicial tribunal from assuming a jurisdiction with which it is not legally vested in cases where damage and injustice would otherwise be likely to follow from such action." *Carpentertown Coal & Coke Co. v. Laird*, 61 A.2d 426, 428 (Pa. 1948).

order for purposes of establishing appellate jurisdiction under Section 722(3). He emphasizes that he did not issue the Administrative Order in conjunction with a case or judicial proceeding in the common pleas court, that there were no disputed claims or parties, and that no final resolution of any claims occurred. Further supporting that the Administrative Order was not final, President Judge Trucilla highlights the practical considerations of the lack of competing advocacy and the absence of a factual record, both of which impair proper appellate review.

President Judge Trucilla reiterates that he issued the Administrative Order "consistent with th[e] [c]ourt's duties, responsibilities, and supervisory authority as President Judge, to protect the integrity of the entire bench, to avoid the appearance of impropriety, and to maintain the public's confidence in the judiciary." Rule 1925(a) Opinion, 2/26/2020, at 84. He contends that a president judge's supervisory authority as "executive and administrative head of court," includes supervising the judicial business of the court, promulgating administrative rules and regulations, and making all judicial assignments. Memorandum of President Judge Trucilla at 8 (citing 42 Pa.C.S. § 325(e)). He further relies upon the common pleas court's authority to "make such rules and orders of court as the interest of justice or the business of the court may require." *Id.* (citing 42 Pa.C.S. § 323). According to President Judge Trucilla, the Administrative Order was warranted to further the "business of the court" by eliminating the appearance of impropriety arising from Judge Domitrovich's ruling on her son's motions or pleadings, prohibiting all judges from signing and filing petitions and motions for attorneys, and directing adherence to the proper procedure for requesting a senior judge.

President Judge Trucilla also relies upon Commonwealth Court case law holding that administrative orders are not appealable where the challenged order was not a final, appealable order resolving a litigated dispute. Memorandum of President Judge Trucilla

at 10-11 (citing *In re Domestic Relations Hearing Room*, and *In re Ownership of Notes & Reproduction of Transcripts*, *supra).* He finds Designated Appellants' reliance upon *In re Silverman* to be inapt, as in that case, the court held that the administrative order constituted a final order because it resolved a fee dispute presented by a particular attorney where there was a pending post-conviction collateral matter before the court. Contrarily, President Judge Trucilla asserts, there is no underlying judicial proceeding to which the Administrative Order was ancillary.

Accordingly, President Judge Trucilla concludes that because the Administrative Order was an exercise of supervisory authority in an internal, administrative, judicial matter, and does not fall under any other provision allowing for an appeal, this Court should quash Designated Appellants' appeal. Nevertheless, President Judge Trucilla acknowledges that this Court may review the Administrative Order without the need for an appellate procedure by exercising our general supervisory power over the Unified Judicial System, as set forth in Article V, Section 10(a) of the Pennsylvania Constitution, or by invoking our King's Bench jurisdiction. Memorandum of President Judge Trucilla at 21 (citing *In re Avellino*, 690 A.2d at 1140 (reviewing under King's Bench jurisdiction a dispute involving a judicial assignment despite the lack of a final, appealable order and where no case was pending)).

### III. Analysis

### A. Appealability

The determination of whether the challenged Administrative Order is appealable is a question of law; thus, our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Scarborough*, 64 A.3d 602, 607 (Pa. 2013). Further, we observe that "[t]he question of the appealability of an order goes to the jurisdiction of the

Court requested to entertain the question." *Id.* at n.10 (quoting *Fried v. Fried*, 501 A.2d 211, 212 (Pa. 1985) (citations omitted)).

Keeping these standards in mind, we begin by examining Designated Appellants' contention that the Commonwealth Court was correct in concluding that the Administrative Order is appealable to this Court pursuant to 42 Pa.C.S. § 722(3). As noted, this section provides that "[t]he Supreme Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in . . . [m]atters where the qualifications, tenure or right to serve, or the manner of service, of any member of the judiciary is drawn in question." As the statutory text of this provision indicates, for the order to fall within the exclusive appellate jurisdiction of this Court under Section 722(3), the common pleas court order must be a final order.[12]

In 1992, this Court adopted Pennsylvania Rule of Appellate Procedure 341, which, as relevant here, defines a "final order" as one that "disposes of all claims and of all parties." Pa.R.A.P. 341(b)(1). This Court has characterized a final order as "one which ends the litigation or disposes of the entire case." *Scarborough*, 64 A.3d at 608 (citing *Ben v. Schwartz*, 729 A.2d 547, 550 (Pa. 1999)). This characterization assumes the existence of a particular case that is the subject of litigation before a court. As noted, President Judge Trucilla contends that he did not issue the Administrative Order in conjunction with a case or judicial proceeding in the common pleas court, that there were no disputed claims or parties, and that no final resolution of any case occurred. Upon careful review, we agree.

We find persuasive Commonwealth Court jurisprudence addressing whether particular administrative orders constitute final, appealable orders. In the case of *In re*

---

[12] We observe that the Commonwealth Court, in transferring the matter to this Court pursuant to Section 722(3), did not engage in a separate analysis regarding whether the Administrative Order was a final order.

*Ownership of Notes & Reprod. of Transcripts*, 763 A.2d 575 (Pa. Cmwlth. 2000), the prothonotary appealed to the Commonwealth Court an administrative order issued by the president judge, prohibiting individuals from copying notes of testimony filed as of record in the prothonotary's office. The Commonwealth Court quashed the appeal, holding, *inter alia*, that it was not a final order under Pa.R.A.P. 341. The court explained that the president judge issued the challenged order for the exclusive purpose of implementing an administrative directive. *In re Ownership of Notes & Reprod. of Transcripts*, 763 A.2d at 578. The court further emphasized that there was no judicial proceeding before the common pleas court involving disputed claims or adverse parties, and no case, action, or petition was resolved finally by the administrative order. *Id.*

The Commonwealth Court addressed a somewhat similar issue in the case of *In re Domestic Relations Hearing Room*, 796 A.2d 407 (Pa. Cmwlth. 2002). There, a controversy arose over the use of a room in the Northumberland County Courthouse. The president judge issued an administrative order, declaring that the room was an extension of the court of common pleas for disposition of enumerated petitions and other court-facility uses, with any other use requiring express approval of the president judge. The Northumberland Board of Commissioners appealed the administrative order to the Commonwealth Court, as it had previously used the room to swear in new members and desired to continue the practice.

Relying upon its decision in *In re Ownership of Notes & Reprod. of Transcripts*, the Commonwealth Court quashed the appeal. The court held that the administrative order was not a final order under Pa.R.A.P. 341 because there was no judicial proceeding before the common pleas court, and the administrative order did not resolve finally any case, action, or petition. *Domestic Relations Hearing Room*, 796 A.2d at 408.

The same is true in the instant case.  President Judge Trucilla did not issue the Administrative Order in connection with a judicial proceeding before the common pleas court, and did not resolve finally any disputed claims between parties.  Instead, regardless of propriety, the express purpose of the Administrative Order was to implement an administrative directive to eliminate any appearance of impropriety on the part of the Erie County judiciary in relation to the business conducted by the court.  *See* 42 Pa.C.S. § 325(e) (providing that the president judge, as the administrative head of the court, shall, *inter alia*, supervise the judicial business of the court).  In furtherance of this purpose, the Order: (1) prohibited Judge Domitrovich from acting on petitions filed by her son; (2) prohibited members of the Erie County bench from signing or filing petitions brought before the jurist; and (3) prohibited jurists from *sua sponte* requesting the services of a retired Senior Judge for purposes of reassigning that sitting judge's assigned caseload.[13]

We agree with Designated Appellants that courts must examine the nature and impact of an administrative order when deciding whether the order is final and appealable, rather than relying upon the order's moniker as "administrative."  We conclude, however, that this matter is distinguishable from those cases relied upon by Designated Appellants where particular administrative orders were deemed final, appealable orders.

In the case of *In re Silverman*, *supra*, the administrative order resolved finally a fee dispute presented by an attorney in connection with a pending post-conviction collateral appeal.  Similarly, in *Murphy v. Murphy*, and *Kline v. Kline, supra*, the appellate court considered administrative orders within the context of domestic relations appeals that finally resolved the merits of the cases.  Notably, no party appealed the administrative

---

[13] As noted *supra* and discussed in more detail *infra*, we do not speak to the propriety of President Judge Trucilla's Administrative Order as we choose to resolve that controversy internally.

orders themselves. As observed throughout, the Administrative Order challenged herein did not resolve finally a claim between disputed parties.

We further find that Designated Appellants' reliance upon *Troutman v. Court of Common Pleas (In re Admin. Order No. 1-Md-2003)*, *supra*, is misplaced. In *Troutman*, a president judge issued an administrative order directing the clerk of courts to comply with procedures outlined in expungement orders by sealing certain records in his custody or potentially face contempt proceedings. The clerk of courts filed exceptions to the administrative order, which the common pleas court denied. The clerk of courts appealed the order denying exceptions to the Commonwealth Court, which affirmed. On appeal to this Court, we examined whether the Commonwealth Court had appellate jurisdiction over the appeal. Answering the inquiry in the affirmative, we held that the Commonwealth Court had appellate jurisdiction pursuant to 42 Pa.C.S. § 762(a)(1)(ii) over the common pleas court's order denying exceptions because it was a final order disposing of the claims and parties before it, which arose from a civil proceeding commenced by a member of the Commonwealth government.[14] *Troutman*, 936 A.2d at 7. To the contrary, the challenged Administrative Order herein did not arise from a civil or otherwise judicial proceeding, and did not dispose of claims between parties.[15] Accordingly, it is not a final order.

As the Administrative Order was not a final order of the common pleas court, Designated Appellants have failed to demonstrate that this Court possesses exclusive

---

[14] While this Court in *Troutman* did not elaborate on the nature of the civil proceeding from which the challenged order arose, we accept the determination for purposes of this appeal.

[15] Designated Appellants' reliance upon *In re Haberstroh*, *supra*, also is misplaced. Although the Commonwealth Court in *Haberstroh* reviewed a president judge's order setting new salaries for court-related employees, there was no discussion in the decision regarding the basis for jurisdiction over the appeal and no objection that the order appealed from constituted a non-final administrative order.

appellate jurisdiction over the matter. *See* 42 Pa.C.S. 722 (providing this Court with exclusive jurisdiction of appeals from final orders of the courts of common pleas in the enumerated eight classes of cases). Accordingly, we quash Designated Appellants' appeal of President Judge Trucilla's Administrative Order for lack of jurisdiction.

*B. Alternative Grounds of Review*

As recognized by both Designated Appellants and President Judge Trucilla, this Court may take cognizance of the current administrative dispute, regardless of the fact that the subject matter does not fall within our statutory original jurisdiction and in the absence of a final order over which we can exercise appellate jurisdiction.[16] Article V, Section 2 of the Pennsylvania Constitution provides that the Supreme Court "shall be the highest court of the Commonwealth," that the Court possesses "the supreme judicial power of the Commonwealth," and that it has jurisdiction as "provided by law." PA. CONST. art. V, § 2(a), (c); *see also* 42 Pa.C.S. § 501.[17]

Relevant here, Article V, Section 10(a) of the Pennsylvania Constitution affords the Supreme Court "general supervisory and administrative authority over all the courts." PA. CONST. art V, § 10(a); *see also* 42 Pa.C.S. § 1701. "The power of controlling the action of inferior courts is so general and comprehensive that it has never been limited by prescribed forms of procedure or by the particular nature of the writs employed for its exercise." *In re Avellino*, 690 A.2d at 1140 n.1 (citing *Carpentertown Coal and Coke Co.,*

---

[16] Section 721 of the Judicial Code provides for the Supreme Court's original jurisdiction in cases of habeas corpus, mandamus or prohibition to courts of inferior jurisdiction, and *quo warranto* as to any officer of statewide jurisdiction. 42 Pa.C.S. § 721. As referenced throughout, Section 722 provides for this Court's exclusive jurisdiction over final orders of the court of common pleas in a variety of classes of cases.

[17] We appreciate the distinction between "jurisdiction" and "power." Jurisdiction relates exclusively to the competency of the particular court to determine controversies of the general class to which the case presented for consideration belongs, while power or authority of the Court is the capacity "to order or effect a certain result." *Bruno*, 101 A.3d at 659 (internal citations omitted).

61 A.2d at 429). As a component of the Supreme Court's administrative responsibility, "the Court oversees the daily operations of the entire Unified Judicial System, which provides a broad perspective on how the various parts of the system operate together to ensure access to justice, justice in fact, and the appearance that justice is being administered even-handedly." *In re Bruno*, 101 A.3d at 664.

In addition to general powers of adjudication, supervision, and administration, this Court also has "the power generally to minister justice to all persons and to exercise the powers of the court, as fully and amply, to all intents and purposes, as the justices of the Court of King's Bench, Common Pleas and Exchequer, at Westminster, or any of them, could or might do on May 22, 1722." 42 Pa.C.S. § 502. (derived from Judiciary Act of May 22, 1722, 1 Smith's Law 131). This Court's "King's Bench authority is generally invoked to review an issue of public importance that requires timely intervention by the court of last resort to avoid the deleterious effects arising from delays incident to the ordinary process of law." *Friends of Danny DeVito v. Wolf*, 227 A.3d 872, 884 (Pa. 2020) (citing *Commonwealth v. Williams*, 129 A.3d 1199, 1205-06 (Pa. 2015)). The purpose of the exercise of King's Bench authority is "not to permit or encourage parties to bypass an existing constitutional or statutory adjudicatory process and have a matter decided by the Court, but aids the Court in its duty to keep all inferior tribunals within the bounds of their own authority." *Bruno*, 101 A.3d at 670.

This Court has examined administrative disputes involving judicial assignments pursuant to our supervisory powers in conjunction with our King's Bench jurisdiction. *See, e.g. In re McFalls*, 795 A.2d 367 (Pa. 2002); and *In re Avellino, supra*. Accordingly, we most certainly have the ability to invoke King's Bench jurisdiction to address this administrative matter. *See In re Avellino*, 690 A.2d at 390 (providing that this Court may exercise the "power of general superintendency over inferior tribunals" where no matter

is pending in a lower court). Nevertheless, we find particularly appropriate our previous sentiment that "[a]side from the foundational issues regarding the Court's power and jurisdiction is the difficult discretionary question of when to exercise the Court's authority." *In re Bruno*, 101 A.3d at 641.

Keeping in mind that we should exercise our King's Bench authority with extreme caution, *id.* at 670, we decline to exercise it here, as we do not believe that the instant administrative matter presents an issue of immense public concern or requires immediate resolution. Instead, as is our normal practice, we invoke our general supervisory and administrative authority over all the courts as afforded by Article V, Section 10(a) of our state charter, and choose to resolve the controversy internally.[18]

Based on the foregoing, and as noted, Designated Appellants' appeal is quashed.

Justices Saylor, Todd, Donohue, Dougherty and Mundy join the opinion.

Justice Wecht did not participate in the consideration or decision of this matter.

---

[18] We further decline Designated Appellant's invitation to exercise extraordinary plenary jurisdiction pursuant to Section 726 of the Judicial Code, as there is no issue of immediate public importance pending before an inferior tribunal over which to exercise such jurisdiction. Similarly, we decline Designated Appellants' request to grant a writ of prohibition pursuant to 42 Pa.C.S. § 721(2), as that writ is reserved as an extraordinary remedy where no ordinary remedies provided by law are applicable or adequate. *Carpentertown Coal & Coke Co. v. Laird*, 61 A.2d at 430. As noted, we conclude that this controversy can be resolved adequately through invocation of our supervisory authority.