J-S14018-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF RYAN A. MERGL, ESQUIRE  APPEAL OF RYAN A. MERGL, ESQUIRE | : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | No. 1131 WDA 2021 |

Appeal from the Order Entered August 23, 2021
In the Court of Common Pleas of Mercer County Civil Division at No(s):
2020-654

BEFORE:   McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McCAFFERY, J.:          **FILED:  November 28, 2022**

Ryan A. Mergl, Esquire, appeals from the August 23, 2021, order, entered in the Mercer County Court of Common Pleas, which vacated a prior order of recusal, dated February 2, 2021 (the February 2nd order), from all matters in which Appellant was counsel of record.  Appellant raises a myriad of issues regarding the order, including, *inter alia*, that the trial court was without jurisdiction to rescind the recusal order.  Based on the following, we quash this appeal.

In early 2020, Appellant represented an individual involved in custody dispute.  On January 27, 2020, a hearing took place that resulted in the denial of a petition for emergency relief related to that case, and the scheduling of a

_____

[*] Retired Senior Judge assigned to the Superior Court.

hearing on a petition to modify custody which was to take place on March 11, 2020. *See* Findings of Fact and Order, 6/24/20, at 1-2.

On February 10, 2020, the court entered the following order:

1. Effective immediately, in the event [Appellant] determines he will be late for any court proceeding in front of the Honorable Daniel P Wallace, to include Call of the List and Pretrial Monday, he shall fax or e-mail to Judge Wallace's Chambers, no less than 24 hours prior to said proceeding, a detailed explanation as to why he is requesting to be late to said proceeding.

2. This Court, in its sole discretion, will determine whether his excuse is acceptable. If found to be unacceptable, the Court will write "disapproved" and fax the document back or e-mail [Appellant].

3. If [Appellant] appears late for any proceeding in front of this Court and the Court has not received his fax or e-mail requesting permission to be late, this Court will schedule a contempt hearing and, if found to be in contempt of this Order, [Appellant] will be sanctioned accordingly.

4. This Order shall remain in effect until further Order of Court.

Order, 2/11/20, at 1-2.

On February 28, 2020, Appellant faxed a motion for a continuance of the scheduled March 11th hearing, but the motion contained the wrong date for the custody hearing. *See* Findings of Fact and Order at 2. In his motion, Appellant alleged he had a scheduling conflict due to his having to appear in Allegheny County on an unrelated matter that had been scheduled before the hearing at issue. *Id.* The court denied the motion on March 2, 2020, based on the incorrect hearing date. *Id.* The court also noted that it had requested

a copy of the Allegheny County scheduling order, which was dated January 31st, **after** its own January 27th order was entered. *Id.* at 3.

On March 11th, "without any forewarning whatsoever to his client or the Court, [Appellant] failed to appear for the custody hearing." *See* Findings of Fact and Order at 3. The court noted: "In his stead, [Appellant] had Attorney Allison Hartle appear on his behalf. Attorney Hartle is not a family law practitioner. Furthermore, she met with [Appellant]'s client 20 minutes before the hearing and did not have [Appellant]'s file with her." *Id.* The court then issued a rule to show cause regarding Appellant's purported contempt of court. *Id.* at 1. The court expressed that Appellant's failure to appear was "highly unprofessional," but entered an order, finding Appellant was not in contempt of court because he arranged for substitute counsel to appear on his behalf. Findings of Fact and Order at 4. Appellant appealed the June 24th order, but it was dismissed on September 14, 2020, for failure to comply with Pa.R.A.P. 3517. *See In Interest of Mergl*, 725 WDA 2020, Order dated 9/14/20.

Meanwhile, on September 3, 2020, the trial court entered an order, vacating its February 10th and June 24th orders. *See* Order, 9/3/20, at 1.

Thereafter, on January 29, 2021, Appellant filed a "motion directing the recusal of [the Honorable] Daniel P. Wallace on all cases involving him pursuant to the Canon of Judicial Ethics referenced in Article V, Section 17(b) of the Pennsylvania Constitution" (Motion Directing Recusal of Judge Wallace). In the motion, he incorrectly stated that the court found him in contempt of

court with respect to the June 24th Order. *See* Motion Directing Recusal of Judge Wallace, 1/29/21, at 3. Appellant further stated that on August 24, 2020, he filed a complaint with the United States Department of Justice against Judge Wallace "for violations of Title II of the Americans with Disabilities Act[.]" *Id.* at 5.[1] Additionally, he indicated that on September 4, 2020, he filed a federal civil rights lawsuit against Judge Wallace "alleging violations of Title II of the Americans with Disabilities Act . . . and Section 504 of the Rehabilitation Act . . . including retaliation as a result of the actions taken above[.]" *Id.* at 10. Appellant alleged that since he filed his federal actions, Judge Wallace disqualified himself on numerous matters based on the "appearance of impropriety." *Id.* at 11-18. Moreover, he contended that the judge "has an ethical obligation not to hear or decide matters in which [Appellant] is involved regardless of whether a motion to disqualify is filed" and "continually violates his ethical obligations by . . . demanding that a proper motion be filed when no proper motion exists." *Id.* at 18 (quotation marks omitted). Therefore, he requested that the court direct the recusal of Judge Wallace in all cases involving Appellant. *Id.* at 19.

_____

[1] In his appellate brief, Appellant states that he "suffers from diabetes mellitus, a disability that impairs a major bodily function including the proper working of his endocrine process." Appellant's Brief at 9. He further avers that in July 2020, he was struck by a motor vehicle and as a result, suffered a concussion, which limited his "cognitive activity." *Id.* He states he lives with "prolonged symptoms of vestibular abnormalities" and "it is reasonable to believe that these symptoms will continue indefinitely." *Id.* at 10.

On February 2, 2021, the court entered an order, granting Appellant's request and recusing itself from all cases involving Appellant. *See* Order, 2/2/21. Subsequently, on August 23, 2021, the court entered another order, stating:

1. WHEREAS, [Administrative Offices of Pennsylvania Courts] counsel advised the Court that [Appellant] has failed to correct errors with his federal discrimination complaint filed against the undersigned on September 4, 2020;

2. WHEREAS, as of Friday, August 20, 2021, the federal district court has not assigned a docket number to the complaint due to [Appellant]'s failure to correct the errors and refile the complaint;

3. WHEREAS, [Appellant] also filed an ADA complaint with the Department of Justice, Civil Rights Division, Disability Rights Section against the undersigned on August 24, 2020; and,

4. WHEREAS, the ADA complaint was never served on the undersigned, nor has the Department of Justice ever contacted the undersigned since the complaint was filed.

   NOW THEREFORE, this Court finds that the blanket recusal order involving [Appellant], dated February 2, 2021, and entered at the above term and number, was improvidently granted due to his inaction, and that no conflicts of interest exist between [Appellant] and the undersigned. Accordingly, the order dated February 2, 2021 and is hereby VACATED.

Order, 8/23/21. This appeal followed. On September 29, 2021, the court ordered that Appellant file a Rule 1925(b) statement of errors complained of on appeal within 21 days. *See* Order, 9/29/21. Appellant complied on October 19, 2021.

Thereafter, on November 4, 2021, the trial court entered an order, again recusing itself from all cases involving Appellant and directing that the court

administrator not assign it any cases concerning Appellant. *See* Order, 11/4/21. The court also issued a Pa.R.A.P. 1925(a) opinion, stating since it filed the "blanket recusal [o]rder" on November 4th, Appellant's appeal was "moot." *See* 1925 Opinion, 11/18/21.

On February 1, 2022, this Court issued a rule to show cause why the appeal should not be quashed as interlocutory because it did not dispose of all the claims. *See* Order, 2/1/22, *citing* *McCutcheon v. Philadelphia Electric Co.*, 788 A.2d 345, 349 (Pa. 2002) ("an appeal lies only from a final order, unless otherwise permitted by rule or by statute"); *Spuglio v. Cugini*, 818 A.2d 1286, 1287 (Pa. Super. 2003) (quashing appeal from orders that did not dispose of all claims or parties as interlocutory and unappealable). Appellant filed a response, stating "[t]he only issue at bar is whether Judge Wallace can 'unrecuse' himself from a matter [and therefore, the August 23rd order], though on its face only vacating a prior order, disposes of the only claim of . . . Appellant who is the only party." Appellant's Answer to Order to Show Cause, 2/11/22, at 3 (unpaginated). This Court then issued an order discharging the rule to show cause and referring the matter to the merits panel. *See* Order, 3/8/22.

Appellant raises the following issues on appeal:

1. Did the Court commit an error of law and abuse its discretion in vacating the Order as the court was without further jurisdiction in the case after having made the order for removal and therefore the order rescinding the order of removal was void[?]

- 6 -

2. Did the Court commit an error of law and abuse its discretion in vacating its own Order outside the 30-day statutory period for reconsideration as it is without jurisdiction to modify or rescind the order[?]

3. Did the Court commit an error of law and abuse its discretion in determining that its own independent, self-analysis and personal and unreviewable decision, that only the judge could make, through which he determined that his continued involvement in Appellant's cases creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary, could have produced an improvidently granted order[?]

4. Did the Court commit an error of law and abuse its discretion in vacating its recusal as once the decision is made it is final[?]

5. Did the Court commit an error of law and abuse its discretion in vacating the Order as improvidently granted, implying that it simply erred in granting the recusal to begin with, as doing so is to leave roiling uncertainty[?]

6. Did the Court commit an error of law and abuse its discretion in deeming this appeal moot[?]

Appellant's Brief at 5-6.

Before we may address the merits of Appellant's claims, we must determine whether this appeal is properly before us. Appealability implicates this Court's jurisdiction to review controversies. *See Kulp v. Hrivnak*, 765 A.2d 796, 798 (Pa. Super. 2000) ("[S]ince we lack jurisdiction over an unappealable order, it is incumbent on us to determine . . . whether the appeal is taken from an appealable order."). "Jurisdiction is purely a question of law; the appellate standard of review is *de novo* and the scope of review plenary." *Barak v. Karolizki*, 196 A.3d 208, 215 (Pa. Super. 2018) (citation omitted). As mentioned above, it is "well settled" that "an appeal lies only from a final

order, unless otherwise permitted by rule or by statute." ***McCutcheon***, 788 A.2d at 349. ***See also*** Pa.R.A.P. 341(b)(1) (a final order is any order that "disposes of all claims and of all parties. . . .")

A review of prior case law reveals no authority concerning the finality and appealability of an order as it relates to the recusal of a trial judge from matters in which a certain attorney is counsel of record.[2] Nevertheless, in ***In re Domitrovich***, 257 A.3d 702 (Pa. 2021), the Pennsylvania Supreme Court addressed a similar situation, which we find instructive.

In ***Domitrovich***, an osteopathic medical college petitioned the Erie County Court of Common Pleas "to establish a private police force pursuant to 22 Pa.C.S. § 501,[3] which was granted." ***Domitrovich***, 257 A.3d at 705. On multiple occasions, the school petitioned the trial court for "the appointment of additional officers. Relevant here, from March of 2016 through November of 2019, the Honorable Stephanie Domitrovich had signed several orders, granting petitions filed by [the school] to appoint the private police officers." ***Id.*** Judge Domitrovich's son represented the school in these matters. ***Id.***

---

[2] It merits mention that Appellant did not point to any relevant case law in his response to this Court's rule to show cause. Moreover, he does not address the issue in his appellate brief.

[3] Section 501 addresses the appointment of private police by nonprofit organizations.

The president judge was later informed of Judge Domitrovich's actions and "became aware" that she "personally had signed her son's name on a [school] petition, personally filed some of the petitions on her son's behalf, and personally submitted filing fees in relation to some of the petitions." *Domitrovich*, 257 A.3d at 705. The president judge "orchestrated a private meeting between court liaisons and Judge Domitrovich[,]" at which time, she assured them that she would stop assisting her son. *Id.* The president judge then issued an administrative order, which the Court summarized as follows:

> The [o]rder stated that pursuant to Pennsylvania Code of Judicial Conduct Rules 1.2 ("Promoting Confidence in the Judiciary") and 2.11 ("Disqualification"), Judge Domitrovich [was] "DISQUALIFIED from receiving, considering, and/or signing any Motion or Pleading by and through her son . . ." including those submitted on behalf of his client . . . . The [o]rder also set forth general protocols for all members of the Erie County bench, prohibiting the personal signing or filing of petitions, motions, pleadings, verifications or certifications brought before the jurist. Additionally, the [o]rder directed that "no member of th[e] bench shall *sua sponte* request the services of a retired Senior Judge for the purposes of reassigning that sitting Judge's assigned caseload or docket." Finally, the [o]rder stated that [the p]resident [j]udge . . . was compelled to issue the order to protect the integrity of the bench and to avoid any appearance of impropriety pursuant to Pennsylvania Code of Judicial Conduct Rules 2.15(C) and (D).

*Id.* at 706 (footnotes omitted).

Judge Domitrovich, her son, and the medical school all filed notices of appeal, seeking review with the Commonwealth Court and alleging, *inter alia*, the administrative order "constituted an unlawful *ex parte* adjudication of violations of the Code of Judicial Conduct against a fellow judge of the same court without a hearing, thereby usurping the jurisdiction of the Court of

Judicial Discipline and violating both due process and the right to reputation under Article I, Section 1 of the Pennsylvania Constitution." **Domitrovich**, 257 A.3d at 706-07. The president judge issued a Rule 1925(a) opinion, stating, in part, that the Commonwealth Court "should quash the appeal for lack of jurisdiction" because the order "was not a final order resulting from a judicial proceeding that disposed of disputed claims and parties." **Id.** at 707. The Commonwealth Court "issued a *per curiam* memorandum opinion, transferring the consolidated appeals to [the Supreme] Court pursuant to Section 722(3)[4] of the Judicial Code." **Id.** at 709.

The Supreme Court directed the appellants "to file memoranda addressing the issue of whether the [a]dministrative [o]rder constituted a final, appealable order." **Domitrovich**, 257 A.3d at 709. The appellants offered several responses – principally, they argued "the Commonwealth Court was correct in concluding that the [a]dministrative [o]rder [was] directly appealable to [the Supreme] Court pursuant to" Section 722(3). **Id.** They further contended that the order at issue was "final" because it "disposed of all claims of all the parties, and left no matter unresolved." **Id.** They also "acknowledge[d] case law holding that administrative orders are not

---

4 Section 722(3) provides that the Supreme Court "shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in . . . [m]atters where the where the qualifications, tenure or right to serve, or the manner of service, of any member of the judiciary is drawn in question." 42 Pa.C.S. § 722(3).

themselves final orders[,]" but contended "unlike orders involving judicial assignments, staffing, or the use of court resources, the [o]rder . . . did not involve a truly administrative matter but, rather, rendered findings of fact and adjudications of violations of the Code of Judicial Conduct, which are adjudicatory in nature and not administrative." *Id.*

In response, the president judge asserted that "he did not issue the [a]dministrative [o]rder in conjunction with a case or judicial proceeding in the common pleas court, that there were no disputed claims or parties, and that no final resolution of any claims occurred." *Domitrovich*, 257 A.3d at 710. He also "highlight[ed] the practical considerations of the lack of competing advocacy and the absence of a factual record, both of which impair proper appellate review." *Id.*[5]

The Supreme Court began its analysis by noting that for an order to fall within its appellate jurisdiction under Section 722(3), the order "must be a final order." *Domitrovich*, 257 A.3d at 712 (footnote omitted). The Court then examined the definition of a "final order" as set forth in Rule 341 and stated:

_____

[5] The president judge did "acknowledge" the Supreme Court "may review the [a]dministrative [o]rder without the need for an appellate procedure by exercising [its] general supervisory power over the Unified Judicial System, as set forth in Article V, Section 10(a) of the Pennsylvania Constitution, or by invoking [the Court]'s King's Bench jurisdiction." *Domitrovich*, 257 at 711 (citation omitted).

- 11 -

We find persuasive Commonwealth Court jurisprudence addressing whether particular administrative orders constitute final, appealable orders. In the case of *In re Ownership of Notes & Reprod. of Transcripts*, 763 A.2d 575 (Pa. Cmwlth. 2000), the prothonotary appealed to the Commonwealth Court an administrative order issued by the president judge, prohibiting individuals from copying notes of testimony filed as of record in the prothonotary's office. The Commonwealth Court quashed the appeal, holding, *inter alia*, that it was not a final order under Pa.R.A.P. 341. The court explained that **the president judge issued the challenged order for the exclusive purpose of implementing an administrative directive**. *In re Ownership of Notes & Reprod. of Transcripts*, 763 A.2d at 578. The court further emphasized that **there was no judicial proceeding before the common pleas court involving disputed claims or adverse parties, and no case, action, or petition was resolved finally by the administrative order**. *Id.*

The Commonwealth Court addressed a somewhat similar issue in the case of *In re Domestic Relations Hearing Room*, 796 A.2d 407 (Pa. Cmwlth. 2002). There, a controversy arose over the use of a room in the Northumberland County Courthouse. The president judge issued an administrative order, declaring that the room was an extension of the court of common pleas for disposition of enumerated petitions and other court-facility uses, with any other use requiring express approval of the president judge. The Northumberland Board of Commissioners appealed the administrative order to the Commonwealth Court, as it had previously used the room to swear in new members and desired to continue the practice.

Relying upon its decision in *In re Ownership of Notes & Reprod. of Transcripts*, the Commonwealth Court quashed the appeal. The court held that the administrative order was not a final order under Pa.R.A.P. 341 because there was no judicial proceeding before the common pleas court, and the administrative order did not resolve finally any case, action, or petition. *Domestic Relations Hearing Room*, 796 A.2d at 408.

*Domitrovich*, 257 A.3d at 712-13 (emphasis added).

The Supreme Court turned to the facts before it and determined that the president judge did not issue the order "in connection with a judicial

proceeding before the common pleas court, and did not resolve finally any disputed claims between parties." **Domitrovich**, 257 A.3d at 713. Moreover, the Court stated that "the express purpose" of the order "was to implement an administrative directive to eliminate any appearance of impropriety on the part of the Erie County judiciary in relation to the business conducted by the court." **Id.** Accordingly, the Court quashed the appellants' appeal. **Id.** at 715.[6]

With this legal guidance in mind, we now turn to the matter before us. As mentioned above, Appellant filed a federal discrimination complaint against the trial judge. In response, the judge issued a blanket recusal order on February 2, 2021. However, Appellant purportedly took several missteps with his federal lawsuit, including failing to serve the judge with the complaint, and the judge was informed of Appellant's inaction by judicial counsel. Therefore, in the order at issue, the August 23rd order, the judge vacated that prior blanket recusal order based on a lack of conflict between Appellant and the judge. **See** Order, 8/23/21. It is evident that the order was not issued "in connection with a judicial proceeding before the common pleas court, and did

---

[6] The Court recognized that it could review the matter under alternative grounds (Article V, Section 10(a) of the Pennsylvania Constitution and King's Bench jurisdiction) but it stated that it "should exercise [its] King's Bench authority with extreme caution" and declined to do so because it did not believe "the instant administrative matter present[ed] an issue of immense public concern or require[d] immediate resolution." **Domitrovich**, 257 A.3d at 715.

not resolve finally any disputed claims between parties." ***Domitrovich***, 257 A.3d at 713. Moreover, the purpose of the order was to update the court's status in relation to Appellant as there was no longer an appearance of judicial impropriety or misconduct. Appellant's argument, or lack thereof, does not persuade us otherwise. Accordingly, the August 23rd order is not a "final order" pursuant to Rule 341(b). ***See McCutcheon***, 788 A.2d at 349. Therefore, we quash Appellant's appeal as we lack jurisdiction to entertain the matter.

Moreover, even if the order was final, we would deem the appeal moot — as the trial court noted in its Rule 1925(a) opinion, it filed a second blanket recusal order on November 4, 2021 "on all cases involving" Appellant. 1925 Opinion, 11/18/21.[7]

Appeal quashed. Jurisdiction relinquished.

Judge McLaughlin did not participate in the consideration or decision of this case.

---

[7] The court's action further supports our conclusion that the August 23rd order is not a final order for Rule 341 purposes as the trial court reversed its decision to not recuse itself from matters involving Appellant.

- 14 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/28/2022